MEYERS, PLAINTIFF IN ERROR, v. HART, DEFENDANT IN ERROR.

1. NONSUIT.

Complaint in replevin; answer, a general denial, and a second defense disclosing the true nature of the transaction and setting up a settlement, in which all the matters were adjusted and payment and full satisfaction made: replication by plaintiff. *Held*, that the insufficiency of the evidence to sustain the complaint is not ground for a nonsuit.

2. SPECIAL VERDICT.

It is discretionary with the jury to render a general or special verdict in an action for the recovery of money only, or of specific property. In such cases the court has no power to order special findings.

*Error to the District Court of La Plata County.*

IN August, 1885, plaintiff instituted suit against defendants, A. C. Meyers, George E. West and Frank H. West, in replevin, alleging that in October, 1880, he was the owner of 450 head of cattle and 16 head of horses, and that in November, 1880, the defendants appropriated the property and converted the same to their own use, praying judgment for $15,000. Defendants, Meyers and Frank H. West, answered generally, denying the allegations in the complaint, and specifically by second answer, alleging that in the fall of 1880 the plaintiff was indebted to sundry persons to the amount of $10,000 ; that to secure the sum of $7,500 of such indebted-

ness, on the 8th day of September, 1880, he made and delivered a chattel mortgage on a lot of cattle then in La Plata county to one John H. Werkheiser, payable on or before October 10, 1880; that at maturity plaintiff was not able to pay the debt; that about December 1, 1880, plaintiff and defendants entered into an agreement whereby plaintiff sold, transferred and turned over to the defendants the stock covered by the chattel mortgage to Werkheiser, and all other cattle and horses on the range owned by plaintiff, and executed a bill of sale in writing; that the defendants on their part agreed with the plaintiff that they would assume and pay the indebtedness due to Werkheiser. That the cattle and horses alleged in the complaint to have been converted to the use of the defendants were the cattle and horses covered by the chattel mortgage, and sold and transferred to the defendants by the bill of sale, and that such stock was all that came into the possession of the defendants; that it was further agreed that defendants should sell any or all of the cattle and horses if they should see fit to do so, pay off the mortgage debt, pay themselves for their trouble and all expenses of herding and caring for the stock, and other necessary expenses; that in pursuance of such agreement plaintiff delivered the possession to the defendants of all cattle and horses he owned on the range, the number unknown, but to be ascertained when the stock was gathered. That in pursuance of such agreement defendants paid off and discharged the Werkheiser mortgage, and the cost of keeping and gathering the cattle, and all other incidental expenses and charges. That in October, 1882, at the town of Durango, they had a full and complete settlement of all matters between them pertaining to the stock. That in such settlement the defendants returned and delivered to the plaintiff on the respective ranges all the stock not sold or disposed of by them, which was received and accepted by the plaintiff. At the same time an account was taken and stated between the plaintiff and defendants of all matters in difference between them; that upon such statement and accounting a balance was

found due the plaintiff, for which they turned over and delivered to the plaintiff two horses, which were received by the plaintiff in full satisfaction and discharge of the balance so found due.

A replication was filed denying each allegation in the answer. George E. West filed a separate answer, disclaiming all interest and participation in the transactions as a principal, averring that the only action he ever took in the premises, and the only connection he ever had with them, was as an employee of Meyers and Frank H. West, and as their agent.

On the issue so made the case was tried to a jury. At the close of plaintiff's testimony a motion for a nonsuit was made, which was overruled by the court and an exception taken. A large number of errors are assigned, the first five being to the admission and rejection of evidence. The court gave to the jury upon its own motion ten instructions, on each of which errors were assigned. The refusal of the court to give four instructions prayed by the defendants is assigned as error. It was also assigned as error that the court modified three instructions prayed by the defendants. Counsel for the defendant asked the court to propound to the jury for special findings and answers a list of specific questions, which were refused by the court, and exception taken. The jury found for the plaintiff as against Meyers and Frank H. West in the sum of $800, and as to George E. West the finding was for the defendant. Meyers and Frank West moved the court to set aside the verdict and for a new trial, which was denied. Judgment entered upon the verdict and an appeal taken by A. C. Meyers to this court.

Messrs. RUSSELL & MCCLOSKEY, for plaintiff in error.

Mr. ADAIR WILSON and Messrs. THOMPSON & INGERSOLL, for defendant in error.

REED, J., delivered the opinion of the court.

This case is rather peculiar. It started in as an action of

replevin, and came out as a money demand for money received by the defendants to the use of the plaintiff and a settlement of accounts, but this is only one of its peculiarities; there are several others.

Defendants' counsel, at the close of plaintiff's testimony, made a motion for a nonsuit, which was overruled. This is assigned for error, and most of the argument is devoted to the discussion of this assignment, contending that the suit as brought in replevin was in no way sustained by the evidence. The position is correct. There was no evidence of an illegal taking or an illegal conversion. Had the defendants been content to traverse the allegations in the complaint, the contention might have prevailed, and the refusal to grant a nonsuit be held erroneous; but, after denying all the allegations in the complaint, they interpose what they call a "second defense," in which the true nature of the transaction is disclosed, and setting up a settlement at a certain date, in which all the matters were adjusted, and payment and full satisfaction. To this a replication was filed, and new issues, tendered by the defendants, were formed; these issues were tried and the identity of the original action was lost. This being the case, it was not error to refuse the nonsuit and try the issues made. That it was rather a phenomenal departure and transformation must be conceded.

One of the very few facts satisfactorily established by the evidence was that the defendant in error was greatly in debt, perhaps in excess of his assets and ability to pay. That to secure to Werkheiser $7,500 due him he had made a chattel mortgage of his stock on the range, which was about to mature, and, being unable to meet it, he made the arrangement whereby he conveyed by bills of sale to plaintiff in error and his partner, West, the cattle, horses and other property, and gave a power of attorney also, and they went into possession, at least constructive, of the property. They were to discharge the chattel mortgage, care for, herd, drive and dispose of the stock, etc., and although upon the trial it was attempted to be shown that the sale was absolute, the answer of the

defendants, attempted settlement, and various payments of money made from time to time to the plaintiff, and the delivery of certain of the property, establishes beyond controversy that the parties were not *bona fide* purchasers, but trustees or agents, who, after paying the designated claims and themselves for care and disbursements, were to pay over the surplus to Hart. For two years following the transaction the defendant Hart gave no attention whatever to the stock. It was then the attempted settlement occurred. The plaintiff in error and his partner, West, attempted to account for all the property converted by them, and reconveyed the supposed remnant remaining on the range—but no remnant was found. Matters remained in this condition until 1885, when this suit was brought.

The evidence was very vague and unsatisfactory. At the time of the transfer Hart had no knowledge of the number, classification or kind of stock he was selling, nor did he at any subsequent time have any means of knowing the number at the time of the transfer. An attempt was made by plaintiff upon the trial to furnish data, by which the jury could arrive at an approximate of the number of cattle, by showing the number he had turned out long before upon the range, and by some guesses of what the natural increase should be. Nothing could be more indefinite or unsatisfactory. The different adverse agencies, stealing, straying and starving, might leave the herd, after two or three years, less in number than the original stock. It of course was to the interest of the plaintiff to make the herd as large as possible, while the defendants, having to account for it, were influenced to make it small as possible. Much of the evidence of both parties was hardly admissible, but was probably allowed by the court through necessity, being the best attainable.

I am at a loss to know how the jury found any data upon which to base a verdict. It must have been from the concessions of defendants and their employees as to the amount and value of the property disposed of, and this, perhaps, was sufficient. The most that can be said of all the evidence in the case is, that it furnished the jury a basis from which they

could deduce conclusions. The errors assigned upon the admission and rejection of evidence are not relied upon in argument, and an examination shows that they were not serious, and that they were nearly evenly balanced. A strict application of the rules of evidence would so emasculate the case as to leave very little.

Numerous errors are assigned upon the instructions given and refused, but they are not urged in argument, nor any attempt made to show wherein they were faulty. Notwithstanding this, we have carefully examined the whole mass, given and refused, and find no serious error. The charge given by the court upon its motion, taken as a whole, seems to be eminently fair, and the law controlling the case fairly stated. The modifications of those given upon the prayer of defendants were proper and necessary—those refused were embraced in the charge by the court.

It is urged that the judge erred in declining to submit to the jury a long series of questions for special findings. This contention cannot prevail. Upon the issues made by the answer and replication, which were the only issues tried, the answers to the questions proposed, with two exceptions, could have no bearing whatever, being directed to the supposed illegal conversion of the property, a position abandoned or ignored at the outset. The exceptions were the questions, " Was there a final settlement between plaintiff and defendants ? " And " Was George E. West a party to the contract ? " The first was fully answered by the general verdict, and the second by a verdict in his favor.

In sec. 181, Civil Code, it is provided, " In an action for the recovery of money only or specific property, the jury, in their discretion, may render a general or special verdict."

" In all other cases, the court may direct the jury to find a special verdict in writing," etc.

In the case this subsequently became, it was discretionary with the jury. The court had no power to order special findings. See *Thompson v. Gregor*, 11 Colo. 534.

The judgment of the district court will be affirmed.

*Affirmed.*